```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF ILLINOIS
```

| | |
|---|---|
| ANJENAI BOLDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-3097 |
| | ) |
| LIEUTENANT LAW, et al., | ) |
| | ) |
| Defendants. | ) |

# ORDER AND OPINION

This matter is now before the Court on Defendant Law's Motion [29] for Summary Judgment for Failure to Exhaust. For the reasons set forth below, Defendant's Motion [29] is GRANTED.

## BACKGROUND

Plaintiff Anjenai Bolden is an inmate at Western Illinois Correctional Center. He filed a Complaint against Lieutenant Law and unnamed John Doe members of the tactical team on April 8, 2016. Doc. 1. In his Complaint, Bolden alleged that Defendants violated his constitutional rights during facility-wide strip searches and cell shakedowns. Plaintiff alleged that sometime between April 9, 2014 and April 12, 2014, the tactical team came to his cell and ordered him to strip. Plaintiff was further ordered to spread his buttocks, lift his penis and then open his mouth with his fingers for inspection. *Id*. at 6. Plaintiff alleged the tactical team members made sexually suggestive comments during this process. Plaintiff was then allowed to put his shirt and shorts back on, and "forced to walk with [his] head down and bent over on the inmate butt in front of [him]" in a painful manner. *Id*. All inmates were taken to the gym where Plaintiff claimed they were again strip searched and made to stand with other inmates "butt to butt touching each other."

1

Plaintiff stated that tactical team members again made inappropriate, sexual remarks. *Id*. at 7. In his Complaint, Plaintiff stated he was unable to see the faces of the tactical team but Lieutenant Law was directing the process.

On July 19, 2016, this Court entered a Merit Review Order stating that Bolden could proceed with his Eighth Amendment claim against Defendant Law and the John Doe members of the tactical team who specifically took part in the strip search and cell extraction in April of 2014. The order also directed Plaintiff to identify the John Doe tactical team members during the discovery process and to file a motion to add those individuals to the lawsuit. Doc. 7, at 6.

On February 15, 2017, Defendant Law filed a Motion for Summary Judgment and Memorandum in Support on the issue of exhaustion. Docs. 29, 30. Defendant states the following as Undisputed Material Facts. The shakedown at Western Illinois Correctional Center lasted from approximately April 9, 2014 to April 18, 2014. Bolden does not know the day he was shaken down in the allegedly unconstitutional manner during the operation, but stated that it was on or about April 9. Bolden attached a copy of a grievance to his complaint dated both April 12, 2014, and April 9, 2014. At the time of the shakedown, Bolden was housed in Housing Unit R3 A Wing cell 53, which was shaken down on April 15 and April 16, 2014. The Administrative Review Board has received a total of 24 grievance appeals from Bolden since April 2014. Doc. 30, at 2–3.

Defendant argues that Plaintiff's assertion that he attempted to exhaust all available administrative remedies is not credible because the grievance predates the day the shakedown occurred. This, Defendant asserts, is direct evidence that the grievance was not submitted using the prescribed channels. *Id.* at 6. In his Response, Plaintiff admits that he made a mistake when filling out the date on the grievance form. Doc. 36, at 1. He explains that he did not have a grievance form in the cell at the time and had to wait until the prison was no longer on lockdown

to get a form. Plaintiff states that he actually wrote the grievance on the day the lockdown was lifted (April 18), but did not submit the grievance until the next day (April 19) because he wanted to wait to show it to potential witnesses. According to Plaintiff, despite asking counselors Moore and Schutte about the status of his grievance, he never received a written response. *Id*. at 2–4. Plaintiff provided four exhibits attached to his Response—his own affidavit and three others from fellow inmates attesting to the allegations in his grievance and Complaint. *Id*. at 6–14. Affiant Reginald Wilbertson stated that Bolden obtained a grievance and wrote the tactical team up after lockdown. Bolden showed Wilbertson the grievance and Wilbertson witnessed Bolden put the grievance into the grievance box on April 19, 2014. *Id*. at 11–12. A *Pavey* hearing was held on the issue on November 15, 2017. See *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). This Order follows.

**LEGAL STANDARD**

Under Rule 56(a) of the Federal Rules of Civil Procedure, a party moving for summary judgment must identify each, or part of each, claim or defense on which summary judgment is sought. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id*. In making this determination, the Court must construe the evidence in light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).

Under the Prison Litigation Reform Act, a prisoner is required to exhaust "such administrative remedies as are available" before bringing a suit "with respect to prison conditions under section 1983 ... or any other federal law." 42 U.S.C. § 1997e(a). "The exhaustion requirement is interpreted strictly; thus, a 'prisoner must comply with the specific procedures and

3

deadlines established by the prison's policy.' " *Pyles*, 829 F.3d at 864 (quoting *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015)). Unexhausted claims are procedurally barred from consideration. See *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). If a material dispute of fact remains after full discovery and briefing on the issue, the Court may conduct an evidentiary hearing and make credibility determinations pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Failure to exhaust administrative remedies is an affirmative defense and it is the defendant's burden to show the plaintiff failed to exhaust. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citing *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011)). In Illinois, state prisoners must follow a three stage process to exhaust their administrative remedies. *Id*. First, an inmate must attempt to resolve the issue through his assigned counselor. Ill. Admin. Code tit. 20, § 504.810. If the prisoner's complaint remains unresolved, he must file a written grievance with a grievance officer. *Id*. The grievance officer and the chief administrative officer review the grievance and provide a response to the prisoner. *Id*. § 504.830. Finally, if the prisoner wishes to appeal the chief administrative officer's decision, he may appeal to the director of the Illinois Department of Corrections. *Id*. § 504.850.

## ANALYSIS

The basis of Defendant Law's Motion is simple. He asks the Court to find that Plaintiff is not credible because the grievance he purports to have submitted is dated April 9 and April 12, 2014, yet the shakedown of his cell did not occur until April 15 and April 16, 2014. Doc. 30, at 6. These incorrect dates, Defendant argues, indicate that the grievance was backdated and never submitted. Plaintiff responded by admitting that he made an error regarding the date of the incident, but claims he submitted the grievance on April 19, 2014, the day after the lockdown was lifted. Doc. 36.

4

In short, Plaintiff is not credible and Defendants are entitled to summary judgment on the issue of exhaustion. The incorrect dates on Plaintiff's purported grievance may well be evidence that he post-dated it. Furthermore, Plaintiff's attempts in his Response and at the *Pavey* hearing to explain the inconsistency with the dates simply create more questions surrounding the purported filing of the grievance.

**(1) Bolden Failed to Exhaust**

Bolden's Complaint itself contains numerous revisions that call into question whether the purported grievance existed before the Complaint was filed. The Complaint leaves unchecked whether the grievance process was completed, but begins with "Plaintiff filed a grievance on …." The date that follows is "4/9/14" with the 9 crossed out and replaced with a 12. Doc. 1, at 4. In the same paragraph, he states in parentheses after his summary that "attached is a copy of my grievance filed on __/__/__." Doc. 1, at 4. On the next page of his Complaint, Bolden twice states that the shakedown occurred on April 9, 2014, but with "through 12" written above the date. *Id.* at 5. The grievance attached to his Complaint lists as the date of the incident "4/12/14" with the 12 appearing to be written over another number. The signature line at the bottom of the grievance is dated April 9, 2014. Significantly, under the "Summary of Grievance" section, Bolden starts with "*Today* when the tactical team …." Doc. 1, at 12 (emphasis added). In his Response, after being alerted to the actual dates of the shakedown, Plaintiff asserted for the first time that the shakedown occurred on April 15 and April 16, 2014, and he obtained and filed his grievance on April 19, 2014, one day after the facility lockdown was lifted. He attributes the discrepancy to human error.

Bolden had the opportunity at the *Pavey* hearing to explain the discrepancies identified above, but he has not and can not explain one word: Today. "Today" cannot be April 9, and April 12, and April 19. It can only be one day, or, in Mr. Bolden's case, possibly two. Those are the two

5

dates he indicated on the grievance attached to his Complaint. But under no explanation can "today" mean April 19, his current version. Moreover, in the "Relief Requested" section of Bolden's purported grievance, he asks for a copy of his grievance. Yet now he claims to have a copy—actually an original—because he filled out two grievance forms so he would have his own copy as proof. The facts do not support the Plaintiff. His explanations strain credulity, and so do the affidavits and testimony of other inmates. In short, the Court finds Bolden's explanations incredible and believes that Bolden conjured up the grievance in order to file his complaint, which he did on April 8, 2016, nearly two years later and interestingly enough, within the same time frame as all his witnesses who filed the same complaint against the same defendants. See *Aguado v. IDOC*, No. 16-3081 (*filed* March 28, 2016), *Blakes v. Godinez*, No. 16-3107 (*filed* April 14, 2016), *McDowell v. Korte*, No. 16-3106 (*filed* April 14, 2016). In sum, the Court finds that Defendant has met his burden of establishing Bolden failed to exhaust his administrative remedies and is therefore entitled to summary judgment.

**(2) A Note on the IDOC's Grievance Procedures**

This dispute is now resolved, but the issue continues to be relitigated. The Court has previously admonished the IDOC for not having any sort of Kiosk in place where inmates would be able to file grievances and receive an electronic copy or confirmation that their grievance has been received. See, e.g., *Daniels v. Hubert*, No 15-1085 (C.D. Ill. Nov. 23, 2015). The Court continues to hold *Pavey* hearings, continues to address exhaustion issues, and continues to use valuable resources and time, not to mention the resources of the already-strained Attorney General's Office. The Court recognizes that the claims in Bolden's case arose in 2014, before the Court's discussions with the IDOC. However, Ms. McCarty testified that there are still ongoing discussions to address the grievance issues at IDOC facilities. Whether these issues are

management issues, employment issues, budget issues, or just don't-want-to-change issues remains unknown to the Court. What *is known* is that these hearings are often a complete waste of time given the simple fix. Defendants are entitled to summary judgment for failure to exhaust, and the IDOC is requested, once again, to fix this problem.

**CONCLUSION**

For the reasons stated above, Defendant Law's Motion [29] for Summary Judgment for Failure to Exhaust is GRANTED.

Signed on this 21st day of November, 2017.

s/ James E. Shadid<br>
James E. Shadid<br>
Chief United States District Judge